Ex parte Beatrice ULLMANN, Bella Angeline Cantu, Darlene Jordan, Josephine Molina, Cristina Porter and Tom Huron.

No. 16611.

Court of Civil Appeals of Texas, San Antonio.

March 18, 1981.

Rehearing Denied May 6, 1981.

Larry N. Sullivan, Ray Leach, Stephen G. Cochran and Donald S. Bayne, San Antonio, for appellant.

David M. Eisen, Houston, amicus curiae.

Richard Hayes, Bernie Martinez, Bexar County Dist. Atty.'s Office, San Antonio, Martha Allan, Asst. Atty. Gen., Austin, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a consolidated habeas corpus case challenging both the constitutionality of the Texas Mental Health Code, Article 5547, section 66, and compliance with that Code by the State of Texas in retaining appellants at the San Antonio State Hospital pursuant to orders for protective custody. Trial was to the court without a jury who found that the Texas Mental Health Code was constitutional on its face and as applied to appellants, and that appellees have complied with the provisions of the Code.

■ Appellees first contend that this case is moot since all the individuals involved have been released from confinement. Appellants urge that the case is not moot under certain exceptions to the mootness doctrine.[1]

---

1. The two exceptions to the mootness doctrine are the "capable of repetition yet evading review" exception, see *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), and the "collateral consequences" exception, see

At the time oral arguments were heard in this case, the question of mootness in this type of situation was a very close one and was subject to different holdings by courts of civil appeals. This court in *State v. Lodge*, 597 S.W.2d 773 (Tex.Civ.App.—San Antonio 1980), had held that an appeal from an order of involuntary commitment for temporary hospitalization for a period not to exceed 90 days was not moot although the appellants had been discharged. The Austin court of civil appeals in *Jones v. State*, 599 S.W.2d 897 (Tex.Civ.App.—Austin 1980), reached a different result and held that the case was moot where the patient was discharged. The Supreme Court of Texas granted writs in both cases and in an opinion at 608 S.W.2d 910, affirmed the judgment of this court in *Lodge* and reversed and remanded the *Jones* case.

This court in *Lodge* discussed the two recognized exceptions to the mootness doctrine and in holding that the collateral consequences exception was applicable discussed in some detail the stigma and adverse consequences flowing from a judicial determination of mental illness. Appellees assert that *Lodge* is distinguishable because it involved commitments for temporary hospitalization for up to 90 days rather than an order of protective custody.[2] Appellees further urge that we are here concerned with writs of habeas corpus and therefore they are not final judgments which can affect appellants. We disagree. *See* the opinions of this court and of the supreme court in *Lodge, supra.* The collateral consequences flowing from confinement under order of protective custody are no less severe than those flowing from temporary commitment under an application for temporary hospitalization except for the difference in periods of confinement. Further-

more, the Mental Health Code provides for a method of speedy appeal from a determination of mental illness under the order of temporary hospitalization for 90 days. In *Lodge*, the supreme court noted that this legislative purpose would be frustrated in most cases by the application of a mootness doctrine to orders for temporary commitment. The Mental Health Code does not provide for a method of appeal from orders of protective custody; therefore, habeas corpus is the only remedy available to those seeking relief from such orders. To deny appeal in such cases would be to deny the appellants a remedy of any kind. Other jurisdictions have found appeals from emergency and voluntary committals were not moot under the "capable of repetition by evading review" exception to the mootness doctrine. *See Doe v. Gallinot*, 486 F.Supp. 983 (C.D.Cal.1979); *French v. Blackburn*, 428 F.Supp. 1351 (M.D.N.C. 1977), *aff'd*, 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979); *Coll v. Hyland*, 411 F.Supp. 905 (D.N.J.1976); *Doe v. Madonna*, 295 N.W.2d 356 (Minn.1980).

We hold that this case is not moot.

Appellants' first point of error asserts that section 66 of Article 5547 is unconstitutional on its face because the statute fails to provide minimal due process for individuals confined in state mental institutions under order of protective custody. In support of such point of error appellants urge that the statute is constitutionally infirm because (a) it fails to provide a notice of opportunity to be heard at the earliest possible time following an individual's detention at a state mental institution, and (b) the Mental Health Code fails to provide notice to the individual to contest an order for protective custody.

Section 66 provides as follows:

---

Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *See also, State v. Lodge*, 597 S.W.2d 773 (Tex.Civ.App.—San Antonio, 1980), *aff'd*, 608 S.W.2d 910 (Tex.1980).

**2.** It is necessary, for the sake of clarity, to distinguish protective custody from temporary hospitalization. The order of protective custody, provided for in Article 5547–66, authorizes emergency detention of individuals who are

thought to be likely to cause injury to themselves or others if not immediately restrained. The order of protective custody allows for detention without a hearing for up to 14 days. The application for temporary hospitalization, if granted following a hearing, provides for commitment of up to 90 days. Tex.Rev.Civ. Stat.Ann. art. 5547–31 (Vernon Supp.1980–1981); art. 5547–33, –38 (Vernon 1958).

If in the county court in which an Application for Temporary Hospitalization or a Petition for Indefinite Commitment is pending, a Certificate of Medical Examination for Mental Illness is filed showing that the proposed patient has been examined with five (5) days of the filing of the Certificate and stating the opinion of the examining physician that the proposed patient is mentally ill and because of his mental illness is likely to cause injury to himself or others if not immediately restrained, the judge may order any health or peace officer to take the proposed patient into protective custody and immediately transport him to a designated mental hospital or other suitable place and detain him pending order of the court.

■ In reaching our decision that the statute is not unconstitutional on its face, we have considered a number of factors. It is well settled that legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold. *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); *Finch v. Mississippi State Medical Association, Inc.,* 585 F.2d 765 (5th Cir. 1978); *Texas State Board of Barber Examiners v. Beaumont Barber College,* 454 S.W.2d 729 (Tex.1970); *Smith v. Patterson,* 111 Tex. 535, 242 S.W. 749 (1922); *State v. Brownson,* 94 Tex. 436, 61 S.W. 114 (1901); *Southern National Bank v. City of Austin,* 582 S.W.2d 229 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

■ In passing on the constitutionality of section 66, we have also looked at other provisions of the Mental Health Code, and there are other provisions of the Code which provide additional due process protection for persons under protective custody.

Article 5547, section 33, provides:

When an Application for Temporary Hospitalization is filed, the county judge shall set a date for a hearing to be held within fourteen (14) days of the filing of the Application. The proposed patient shall be personally served with a copy of the Application and written notice of the time and place of hearing thereon and of the order, if any, to submit to an examination for mental illness. A copy of the Application and notice shall be sent by registered mail to the guardian or a responsible relative of the proposed patient. When such application is filed, the county judge shall simultaneously appoint an attorney ad litem, if there is no attorney representing the proposed patient. Such attorney shall be furnished with all records and papers in said cause together with access to all the hospital and doctors' records in said cause.

As will be noted from a reading of section 33, it contains a number of provisions as to notice when an application for temporary hospitalization is filed: (a) the patient is to be personally served with a copy of the application and written notice of the time and place of hearing thereon; (b) a copy of the application is required to be sent by registered mail to the guardian or a responsible relative of the proposed patient; (c) the county judge is required to simultaneously appoint an attorney ad litem for the patient if there is no attorney representing the proposed patient; and (d) the attorney is to be furnished with all records and papers in said cause together with access to all the hospital and doctors' records in said cause.

In view of the fact that the application for temporary hospitalization is required to be filed prior to the order of protective custody being entered and in view of the stringent requirements of section 33, as set forth above, it is evident that if the Texas Mental Health Code provisions are correctly and constitutionally applied, the patient will have received adequate notice prior to the entry of the order of protective custody.

In *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd sub nom., Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973), the court said:

The emergency commitment to a hospital for mental illness on a temporary basis of a person on the finding of a physician that he is a danger to himself or others *without prior notice and hearing* does not offend the due process clause provided there is available to him an adequate means of testing the validity of his con-

finement within a reasonable period of time. (emphasis added)

346 F.Supp. 1265 at 1268.

It should be noted that while *Logan* would not appear to require any notice or service on the individual, under the Texas statutory scheme discussed above, the patient would have had an attorney appointed for him and would have received notice of the application for temporary hospitalization order for examination, as well as a notice of the time and place of the hearing on a temporary commitment. If the statute is constitutionally applied, the patient would thus have received more due process under the Texas statute than is required under *Logan*.

The primary thrust of appellants' complaint as to the unconstitutionality of the statute is directed at the 14-day detention period provided in the statute. Appellants argue that this period is unnecessarily long and cite statutes in various states which provide for shorter periods. The American Civil Liberties Union, in their amicus curiae brief, suggest a 72-hour period of detention. Some state courts have found various time periods for emergency confinement to be unconstitutional. *See Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974); *Doe v. Madonna*, 295 N.W.2d 356 (Minn.1980). The United States Supreme Court has never decided exactly what time period is constitutionally required for a state to hold a probable cause hearing in emergency civil commitments. However, in *Logan v. Arafeh, supra*, a federal district court refused to find the Connecticut emergency commitment statute, which allowed for up to 45 days' detention without a hearing, unconstitutional, and the Supreme Court in *Briggs v. Arafeh, supra*, summarily affirmed such holding.

In 1976, a New Jersey federal district court, in upholding a 20-day period of confinement without a hearing discussed the *Logan* case and stated:

> The issue of whether a preliminary hearing is constitutionally mandated is more precisely phrased in terms of whether a hearing which may be held as long as twenty days after confinement meets constitutional requirements. The inquiry is not whether this court thinks a shorter period might be desirable or of greater benefit to the patient, but whether the time span is unconstitutional.
>
> A number of courts have grappled with the problem in recent years. . . .
>
> The Supreme Court has passed upon the issue only once. In *Briggs v. Arafeh, supra*, the Court summarily affirmed a three-judge court ruling that a statute allowing confinement of up to 45 days without a hearing was constitutional. While the rulings on permissible delay allowable in the scheduling of hearings as set out in *Logan* and *Fhagen* [*v. Miller*, 29 N.Y.2d 348, 328 N.Y.S.2d 393, 278 N.E.2d 615] have been said to lack persuasion, we are not free to disregard the Supreme Court's affirmance of *Logan*, summary though it was. In *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Court emphasized that such affirmances are rulings on the merits of the controversy and binding upon the lower courts. *See also Colorado Springs Amusements, Ltd. v. Rizzo*, 524 F.2d 571 (3d Cir. 1975).

*Coll v. Hyland*, 411 F.Supp. 905 (D.N.J. 1976).

The 14–day period is not an unreasonable period of time to allow a more rigorous examination and to allow the defense time to adequately prepare for a hearing.

Section 66 neither prescribes nor precludes a hearing prior to detention under an order of protective custody. There would appear to be ample discretion in the committing court to hold such a hearing either on its own motion or upon request.

It is seen that the requirements from an order for protective custody under the Texas Mental Health Code squarely meet the requirements set forth in *Logan*. The 14–day period provided for in the Texas statute is well within the 20–day period set forth as a reasonable period of time in *Coll v. Hyland*, and is considerably less than the period provided in *Logan*.

Article 5547–66 is constitutionally valid on its face, and when considered with other applicable provisions of the Texas Mental Health Code, adequately satisfies the due

process requirements under the United States and Texas Constitutions. Appellants' point of error number one is overruled.

Appellants, by several points of error, complain that the statute was unconstitutionally applied to them because (1) there was a denial of due process under the United States Constitution and the Texas Constitution; (2) appellants were denied effective assistance of counsel; and (3) appellants were not appointed counsel simultaneously upon the filing of the order of temporary hospitalization in violation of section 33, Article 5547.

■ The subject of an involuntary civil commitment proceeding has the right to effective assistance of counsel at all significant stages of the commitment process. *Heryford v. Parker*, 396 F.2d 393 (10th Cir. 1968); *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974); *Lessard v. Schmidt*, 349 F.Supp. 1078 (E.D.Wis.1972), *vacated and remanded on other grounds*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *reinstated and enforced*, 379 F.Supp. 1376 (E.D.Wis. 1974), *vacated on other grounds*, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *reinstated*, 413 F.Supp. 1318 (E.D.Wis. 1976); *Dixon v. Attorney General of Commonwealth of Pennsylvania*, 325 F.Supp. 966 (M.D.Pa.1971).

A Commentary has recently stated:

Cases such as *Hawks* [*v. Lazaro*, 202 S.E.2d 109 (W.Va.1973)] and *Quesnell* [*v. State*, 83 Wash.2d 224, 517 P.2d 568 (1973)] illustrate the defects of the so-called attorney-for-the-day system often employed in both the civil commitment and juvenile processes. This is a method by which one lawyer represents every patient who appears for his commitment hearing on a particular day. The attorney is paid a scheduled fee for each case which he handles. I would submit that this system is the primary cause of ineffective legal representation in the civil commitment process. The attorney is theoretically present to render competent legal assistance to each of his clients, but in practice the sheer number of cases on the calendar combined with the limited time allotted for hearing them often prohibits the attorney from even approaching the goals suggested by the commentators. Some courts considering timeliness of appointment of counsel in criminal cases have fashioned a presumption that an untimely appointment constitutes a prima facie case of ineffective assistance of counsel. There is no reason why this doctrine should not be applied in the civil commitment sphere.

Brunetti, *The Right to Counsel, Waiver Thereof, and Effective Assistance of Counsel in Civil Commitment Proceedings*, 29 S.W.L.J. 684 (1975).

■ Appellants' contentions as to effective assistance of counsel in this case are three-fold:

(a) The record discloses that appellants' attorney ad litem, Mr. Larry N. Sullivan, was appointed to represent 23 individuals, whose hearings were all scheduled for the same date and at the same time. There is testimony in the record that this is not unusual in Bexar County on this type of hearing, and on some occasions an attorney is required to represent as many as 40 proposed patients at one time. We cannot see how any attorney can be expected to adequately represent such a number of persons in one short hearing. The district attorney of Bexar County in his brief candidly states that the main job of the attorney ad litem consists of making sure the proper papers have been filed. This is not a true adversary proceeding.

(b) The situation is further aggravated by the fact that the record discloses that such attorney ad litem was not apprised of the identity of the persons he was supposed to represent until approximately four days before the date of the hearing. Such a short period of time does not allow the appointed counsel to make an effective investigation even as to a much smaller number of clients. Moreover, he has no time to adequately prepare his case. Counsel must be made available far enough in advance of the final complaint hearing to insure an adequate opportunity for presentation. *Lynch v. Baxley, supra.* The right to counsel is a

right to counsel who can adequately serve in a traditional adversary role. An attorney ad litem cannot serve as an adequate adversary under circumstances in which he is to represent 23 persons with only four days' notice.

(c) Section 33 of the Mental Health Code provides that when an application for temporary hospitalization is filed the county judge shall simultaneously appoint an attorney ad litem who shall be furnished with all records and papers in said case together with access to all the hospital and doctors' records in said case. The record here discloses that appellants herein were initially confined between April 29 and May 2, 1980. The record further shows that Mr. Larry Sullivan, the attorney ad litem appointed for appellants, was notified of his appointment around April 21, 1980, by telephone a few days later received a letter from the county judge dated April 21, 1980, confirming the appointment. The letter stated that Mr. Sullivan would serve as attorney ad litem in cases before the county court during the week of May 12, 1980. The letter did not contain the names of the individuals that Mr. Sullivan was to represent. The official order appointing Mr. Sullivan was entered on May 5, 1980. Mr. Sullivan testified that he learned for the first time on May 6, 1980, that he was appointed to represent 23 persons. On Thursday, May 8, 1980, Mr. Sullivan received a list of the names of the individuals he was appointed to represent. The hearing on an application for temporary hospitalization was held on Monday, May 12, 1980. It is clear under the record that the provisions of section 33 of the Mental Health Code were not complied with. Appellants argue that they were denied effective assistance of counsel. We agree.

This court in *Clark v. Matthews*, 5 S.W.2d 221 (1928, Tex.Civ.App., no writ), stated:
The Constitution and laws of Texas jealously protect the liberties of the citizens of the commonwealth, and throw about each citizen, sane or insane, the safeguards of being heard in person or by attorney, or by both, .... If the rights of any class of persons should be more closely and sacredly guarded than another, it is that unfortunate individual who, rightfully or wrongfully, is charged with having a mind diseased or a reason dethroned. The unfortunate or his friends have the right to insist upon compliance with every form prescribed by law, which has been enacted for the protection and preservation of his liberty.
5 S.W.2d at 222.

■ We have concluded that appellants have not been afforded adequate assistance of counsel and that due process of law has been denied them.

We hold that (a) Article 5547, section 66, is not unconstitutional on its face; (b) such statute has been improperly and unconstitutionally applied as to these appellants; and (c) the writs of habeas corpus should be granted.

The judgment of the trial court upholding the constitutionality of Article 5547–66 is affirmed. The judgment of the trial court regarding the application of such statute as to these appellants is reversed. The writs of habeas corpus are granted.