**Santiago LUNA, Plaintiff,**

v.

**Edwin R. VAN ZANDT, et al.,
Defendants.**

**Civ. A. No. B–78–13.**

United States District Court,
S.D. Texas,
Brownsville Division.

Nov. 24, 1982.

Gerald A. Garcia, Texas Rural Legal Aid, Harlingen, Tex., for plaintiff.

Martha H. Allan, Asst. Atty. Gen. of Texas, Austin, Tex., for defendants.

## MEMORANDUM OPINION

KAZEN, District Judge.

This matter comes before the Court on cross-motions for summary judgment. The case was brought as a class action pursuant to 42 U.S.C. § 1983 to declare unconstitutional and enjoin enforcement of Texas procedures governing the involuntary commitment of persons pursuant to orders of protective custody issued under Tex.Rev.Civ. Stat.Ann. art. 5547–66 (Vernon 1958). Jurisdiction is based on 28 U.S.C. § 1343(3) and (4).

Plaintiff, Santiago Luna, brought this action individually and on behalf of "all persons who are or will be patients of mental health facilities administered by the Texas Department of Mental Health and Mental Retardation who have been, or will be, involuntarily committed to confinement in such facilities pursuant to Orders of Protective Custody issued under Tex.Rev.Civ.Stat. Ann. art. 5547–66 (Vernon 1958)". Stipulation 2; Order, December 31, 1980. The Court certified the case as a class action by Order of December 31, 1980, pursuant to Rule 23(b)(2), Fed.R.Civ.P.

Defendants are the former and current chairman and members of the Texas Board of Mental Health and Mental Retardation (TBMHMR), the former and current commissioner of the Department of Mental Health and Mental Retardation, and the Director of the Rio Grande State Center for Mental Health and Mental Retardation.[1] Plaintiff contends that the Texas scheme for protective custody orders is unconstitutional on its face and as applied, in violation of the due process clause of the Fourteenth Amendment. The parties are in agreement that this case presents issues that can be decided as a matter of law and therefore can be disposed of on motion for summary judgment and the pleadings, briefs, and stipulations of the parties.

Plaintiff Santiago Luna was, at the time of commitment, a thirty-six year old resident of Brownsville, Cameron County, Texas. He was committed on December 30, 1977 to the Rio Grande State Center for Mental Health and Mental Retardation (RGSC) under twenty-four hour emergency commitment orders pursuant to Article 5547–27, V.A.T.S. Three days later, on January 3, 1978, an application for temporary commitment of Luna was filed pursuant to Article 5547–31 and a hearing on the application was set for January 12, 1978 (nine days later). Also on January 3, an order of protective custody was issued by the county court pursuant to Article 5547–66, to confine Luna (who was already in custody under the December 30 emergency commitment order) pending a hearing on the application for temporary commitment. The order of protective custody was issued *ex parte* after submission of physician certificates pursuant to Article 5547–66. On January 12, Luna, with counsel present, had his hearing before the county court on the application for temporary commitment. The court decided to release Luna; However, for reasons unknown, it was not until January 17 that the county court judge signed the order for release. Luna had been released on January 16, 1978 by the hospital on a two-week pass pending orders from the court. On January 19, 1978, pursuant to the court's order, Luna was discharged from the hospital while still out on furlough.[2] The January 12 hearing was the first granted to Luna since his initial commitment under emergency orders on December 30, 1977. Since his discharge from RGSC in January, 1978, Luna has been treated as an outpatient on a regular basis by RGSC. Stipulations No. 8–15, 17–18.

The Texas civil commitment scheme provides for three stages of involuntary com-

---

1. All Defendants and their successors in office are sued in their official capacities only. Further, Defendants admit that they have acted and continue to act under color of law in detaining the Plaintiff and class members in their facilities pursuant to orders of protective custody issued by Texas courts. Stipulations 7 and 34.

2. The parties stipulated that if the officials at RGSC had received the court's order to dismiss Luna from the hospital on January 12, 1978, they would have released him on that day. Stipulation 16.

mitment. The first stage may be termed emergency commitment. Article 5547–27 provides for immediate detention by magistrate's warrant of persons believed to be mentally ill and likely to cause injury to themselves or others if not immediately restrained. Under the statute, emergency admission may not exceed twenty-four hours (or up to ninety-three hours during weekends or legal holidays) unless a written order is obtained ordering further detention. Article 5547–27, V.A.T.S. Plaintiffs make no challenge to the emergency commitment procedures.

The second stage of detention is termed temporary hospitalization and begins with the filing of an application. The statute requires that the county judge hold a hearing within fourteen days thereafter to determine the need for hospitalization. The patient is served with written notice of the time and place of the hearing, the application for temporary hospitalization, and an order, if any, to submit to an examination for mental illness. When the application is filed the county judge must simultaneously appoint an attorney *ad litem* to represent the patient if he is not already represented by an attorney.[3] The patient's attorney is to be furnished all necessary records and papers in the cause, including relevant hospital and doctors' records. Pending the hearing on the application, the proposed patient may remain at liberty unless he is already a patient in a mental hospital or is placed under protective custody. At the conclusion of the hearing, if need for hospitalization is found, the patient is committed for a maximum of 90 days. Articles 5547–31 through 5547–39, V.A.T.S.

The third stage of commitment is indefinite commitment. These procedures are similar to those provided for temporary hospitalization, but there are different time frames and more stringent standards. Articles 5547–40 through 5547–57, V.A.T.S.

Neither the procedure for temporary hospitalization nor for indefinite commitment

is at issue here. Instead, the Plaintiffs attack only the statutory provision for orders of protective custody. Such orders may be issued by the county judge, *ex parte,* to detain persons pending the hearing on the merits when applications for temporary or indefinite commitment have been filed. Article 5547–66, V.A.T.S. Before a judge may issue an order for protective custody, a Certificate of Medical Examination for Mental Illness must be filed "showing that the proposed patient has been examined within five (5) days of the filing of the Certificate and stating the opinion of the examining physician that the proposed patient is mentally ill and because of his mental illness is likely to cause injury to himself or others if not immediately restrained". Article 5547–66. The statute provides for no notice to the patient of why he is being taken into protective custody. Likewise, there is no statutory provision for any probable cause hearing to justify this form of precommitment custody. Thus, the patient can be held without a hearing for up to fourteen days if he is the subject of a petition for temporary hospitalization (Section 33) and up to thirty days if he is the subject of a petition for indefinite commitment (Section 43). The total period of prehearing custody could be increased by three days if emergency admission preceded protective custody. Articles 5547–66, 5547–67(d), and 5547–27, V.A.T.S.

The Mental Health Code does not provide for a method of appeal from orders of protective custody; therefore, habeas corpus is the only remedy available to those seeking relief from such orders. *Ex parte Ullmann,* 616 S.W.2d 278, 280 (Tex.Civ.App. —1981, writ dism'd w.o.j.). While section 66 does not prescribe a hearing prior to detention, it also does not preclude one. Instead, the section has been held to give "ample discretion" to the committing court to hold such a hearing either on its own motion or upon request of the proposed patient's counsel. *Id.* at 283. Additionally,

---

**3.** Article 5547–33. *See Ex Parte Ullmann,* 616 S.W.2d 278, 281 (Tex.Civ.App.—1981, writ dism'd w.o.j.). In this case, the Texas Court of Appeals has provided some relevant interpretations of the statute that this Court finds useful.

under the Mental Health Code and the rules and regulations promulgated by TDMHMR, a state hospital superintendent "should" request the recision of an order of protective custody where the admission criteria are not met. *See* 25 Tex.Admin.Code § 405.485 (1981).

The Rio Grande State Center (RGSC), to which Luna was committed, is a facility in South Texas operated by Defendants and receives detainees under orders of protective custody from twelve counties.[4] During the fiscal year beginning September 1, 1979 and ending August 31, 1980, RGSC received approximately 219 persons under orders of protective custody. Of these 219 persons, approximately 86 were confined for the full fourteen days allowed by statute before being given a hearing required by statute. Approximately 37% or 81 of these persons were discharged by the court or released by the hospital on or before the expiration of fourteen days; of these 81 persons, 71 were released without hearings and ten were released by the court at their temporary commitment hearings. Stipulations 24–27.

The actual procedures used for issuing orders of protective custody, for setting temporary commitment hearing dates, and for providing for notice and appointment of counsel in temporary commitment cases vary greatly among the different counties in Texas.[5] In each of the calendar years 1976, 1977 and 1978, at least 1,000 persons were confined in TDMHMR facilities under orders of protective custody pursuant to Section 66 and at least 500 a year, or half of these individuals, were confined for the full fourteen days allowed (counting any partial days of confinement) prior to having their hearing on the application for temporary commitment. Some of these individuals have been committed to TDMHMR facilities under orders of protective custody more than once. Often persons confined under orders of protective custody are confined in locked wards. Stipulations 19–23.

Eighty percent (175) of all persons committed to RGSC under orders of protective custody during 1980 were sent from the courts of three counties: Cameron (84); Hidalgo (51), and Webb (40). The number of persons committed to RGSC under orders issued by courts in these counties who were discharged or released on or before the expiration of the fourteen-day limit during 1980 were as follows: Cameron (11 persons or 13%), Hidalgo (23 persons or 13%) and Webb (29 persons or 73%). Stipulations 28–31.

Plaintiffs challenge the constitutionality of the protective custody provision because it permits involuntary detention without a probable cause hearing and because it fails to provide notice of the grounds and authority authorizing protective custody. For the reasons expressed below, the Court agrees with the Plaintiffs and holds that Art. 5547–66 is unconstitutional.

The Fourteenth Amendment provides that a state cannot "deprive any person of ... liberty ... without due process of law". The Supreme Court has repeatedly recognized that commitment to a mental hospital for any purpose produces "a massive curtailment of liberty" that requires due process protections. *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972); *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1975); *Vitek v. Jones,* 445 U.S.

---

**4.** Those counties are Webb, Zapata, Starr, Jim Hogg, Duval, Jim Wells, Kleberg, Brooks, Kenedy, Hidalgo, Cameron, and Willacy.

**5.** The protective custody procedures in Cameron County (the county of Luna's detention) are illustrative, however. During the nine month period from April 25, 1980 through January 30, 1981, 81 applications for temporary commitment were filed in Cameron County Courts at Law. Orders for protective custody were issued in 76 or 94% of the cases. The length of detention before the temporary commitment hearing for these persons were as follows: less than eight days (6 persons); eight to ten days (23 persons); eleven to thirteen days (30 persons); fourteen to seventeen days (14 persons). An additional 3 persons were detained for a total of eighteen, twenty and twenty-one days, respectively, before their hearing because they were confined under emergency commitment orders prior to the entry of their protective custody orders. Affidavit of Anna M. Guardiola.

480, 491–92, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980). Before a person is deprived of a liberty interest, the due process clause requires that he be afforded an opportunity for some kind of hearing "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event". *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). "While '[m]any controversies have raged about . . . the Due Process Clause,' . . . it is fundamental that except in emergency situations . . . due process requires that when a state seeks to terminate [a protected] interest . . ., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (quoting *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971)).

Although the right to a prior hearing in such cases is paramount, *id.* 408 U.S. at 569, 92 S.Ct. at 2705, "extraordinary situations" may justify postponing notice and opportunity for a hearing. *Boddie v. Connecticut,* 401 U.S. at 379, 91 S.Ct. at 786. Every court that has considered this issue agrees, and Plaintiffs concede, that the due process clause does not require a prior hearing in emergency situations like those contemplated by the Texas protective custody provision. These cases have held that a person detained under a civil commitment statute must be given a hearing "within a reasonable time" *after* commitment to insure that probable cause exists to believe that confinement is constitutionally and statutorily warranted. The same courts vary as to the

time in which such hearing must take place. While some have required a hearing to be held much sooner than the Texas statute requires,[6] others have approved of periods longer than Texas allows.[7] The Court has reviewed each of these decisions, but finds none of them conclusive to a resolution of the issues in this case. Due process is not a static concept which can be phrased in terms of universally-applied maximum days or by averaging the limits approved in other cases. Rather, due process "is flexible and calls for such procedural protections as the particular situation demands," *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

A hearing required by due process may be delayed until some time after the deprivation has taken place where there is a compelling state interest to warrant the postponement. *Goldberg v. Kelly,* 397 U.S. 254, 263 n. 10, 90 S.Ct. 1011, 1018 n. 10, 25 L.Ed.2d 287 (1970). The Texas protective custody statute only applies to proposed patients who allegedly pose an immediate threat of harm to self, others, or society. This is an adequate state interest justifying dispensing with a hearing prior to initial detention. *See Lessard v. Schmidt,* 349 F.Supp. 1078; *Logan v. Arafeh,* 346 F.Supp. 1265. However, a period of up to fourteen days may pass or up to thirty days in the case of a proposed indefinite commitment before the patient is granted a hearing. That delay is of sufficient duration to require explanation and justification.

The threat of immediate harm to self or others clearly justifies the initial detention. Once the proposed patient is rendered secure and is placed under custody, however,

6. *Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D. Wis.1972) (three-judge court), *vacated and remanded,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), on remand, 379 F.Supp. 1376 (E.D. Wis.1974); *vacated and remanded,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1974), *reaffirmed,* 413 F.Supp. 1318 (E.D.Wis.1976) (48 hours); *Bell v. Wayne County General Hospital,* 384 F.Supp. 1085 (E.D.Mich.1974) (three-judge court) (5 days); *Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala.1974) (three-judge court) (7 days); *Doremus v. Farrell,* 407 F.Supp. 509 (D.Neb.1975) (three-judge court) (5 days); *Doe*

*v. Gallinot,* 486 F.Supp. 983 (C.D.Cal.1979), *aff'd,* 657 F.2d 1017 (9th Cir.1981) (72 hours).

7. *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn. 1972) (three-judge court), *aff'd sub nom., Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973) (45 days); *Coll v. Hyland,* 411 F.Supp. 905 (D.N.J.1976) (three-judge court) (20 days); *French v. Blackburn,* 428 F.Supp. 1351 (M.D.N.C.1977) (three-judge court), *aff'd,* 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979) (10 days).

this immediate threat of harm dissipates. His continued confinement can no longer be justified on that basis. As the Supreme Court emphatically states, it is not enough that the "original confinement was founded upon a constitutionally adequate basis, if in fact it was, because even if [the] involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed". *O'Connor v. Donaldson,* 422 U.S. 563, 574–75, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975). This is why the courts require that emergency detention of a person may only be maintained for a reasonable time. In determining what is a "reasonable period of commitment", due process requires, at a minimum "some rational relation between the nature and duration of the confinement and its purpose". *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972); *accord, Youngberg v. Romeo,* —— U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Therefore, this Court must closely examine the circumstances to determine whether the commitment under a protective custody order bears a reasonable relation to the goal for which the person was confined. *See Youngberg v. Romeo,* 102 S.Ct. at 2463 (Blackmun, J., concurring).

Defendants rely on *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd sub nom., Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973), in which the court approved holding a hearing as late as 45 days after initial confinement. However, reliance on *Logan* in this case is misplaced. Under the emergency commitment statute in *Logan,* state courts ordered a proposed patient to a hospital for "treatment and care", *id.* at 1269. In such a case, the extended period of time was found to bear a reasonable relation to the goal for which the person was confined:

> The patient is committed for treatment and care, and some knowledge of his mental condition can be gained by visual observation and diagnostic tests. This takes time. On the other hand, where a full blown trial must be had pursuant to § 17–178, additional time to undertake more elaborate testing of the patient's

mental condition, and a more detailed probe into his relevant history, by both the hospital authorities and the expert witnesses who will testify in behalf of the patient is needed.

346 F.Supp. at 1269 (footnotes omitted); *Cf. Coll v. Hyland,* 411 F.Supp. 905 (D.N.J.1976) (follows *Logan* ); *French v. Blackburn,* 428 F.Supp. 1351, 1355 (M.D.N.C.1971) (patient receives treatment during pendency of hearing). In this case, however, Texas courts require the mental hospitals to accept a person into protective custody for "care" only. Treatment is not a goal of protective custody; the hospital may give medication only when necessary to maintain care of the patient. As stated in the affidavit of Gary E. Miller, Commissioner of Mental Health and Mental Retardation:

> It is the policy of the Texas Department of Mental Health and Mental Retardation that patients admitted to a state hospital pursuant to an Order of Protective Custody under § 66 of the Mental Health Code (Article 5547–66, V.A.C.S.) are to be given only that psychiatric treatment which is necessary to prevent physical injury to the patient, treatment personnel or other patients.

When, as here, a state court orders a proposed patient committed for "safekeeping" only, the treatment goal which justified the result in *Logan* is absent. The Court must therefore determine whether the confinement for up to fourteen days bears a reasonable relation to the justification for confinement offered by the state.

Texas justifies a pre-hearing protective custody period of up to fourteen days not on the exigency which justifies the initial detention but on the necessity for adequate preparation by both sides before the hearing on the application for a temporary or indefinite commitment. The Texas Court of Appeals stated in *Ex Parte Ullmann,* 616 S.W.2d at 282:

> The fourteen day period is not an unreasonable period of time to allow a more rigorous examination and to allow the defense time to adequately prepare for a hearing.

Plaintiffs concede that the brief emergency commitment under Texas law is constitutionally justified; however, there is no rational relation between the continued commitment thereafter and the need for a "full record" before the patient's hearing on the temporary or indefinite commitment application.

Defendants have not explained why an intermediate level of inquiry cannot be interposed between the initial confinement and a full-blown hearing on the temporary or indefinite commitment application. The State has not argued that it is bureaucratically unfeasible to schedule a probable cause hearing on a proposed patient's detention before fourteen days. Fourteen days may well be required to afford the detainee a fair final hearing on the temporary commitment application, or thirty days in the case of proposed indefinite commitment, but that is not the issue. The point is that one group of patients remains at liberty pending their hearing while another group has been confined. The State does not contend that the ultimate hearing for the former group is any less meaningful or that preparation for same has suffered on either side because of their non-custodial status. Clearly, the latter group has been confined not to prepare a "full record" for their hearing but rather to restrain them because of their alleged dangerousness. This dangerousness has been determined by *ex parte* affidavits, often made on printed forms and stated in most conclusory terms, without giving the patient any opportunity to be heard. The question, therefore, is what procedures are needed to minimize the risk of errors in confinement decisions without undercutting "efforts to further the legitimate interest of both the state and the patient that are served by" extended delay. *See Addington v. Texas,* 441 U.S. at 430, 99 S.Ct. at 1811. *See also Youngberg v. Romeo,* 102 S.Ct. at 2460 (courts must weigh the individual's interest in liberty against the state's asserted reasons for restraining individual liberty). More precisely, the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) stated that procedural due process involves a balancing of three factors: (1) the private interests involved; (2) the risk of erroneous deprivation of these interests through the procedures used, and the probable value of additional procedures; and (3) the state's interest, including the fiscal and administrative burden that additional procedures would entail. 424 U.S. at 335, 96 S.Ct. at 903; *Williams v. Taylor,* 677 F.2d 510, 514 (5th Cir.1982).

As to the first factor, the private interest in this case is the proposed patient's interest in avoiding protective custody. Given the potential "massive deprivation" occasioned by such custody, this interest is powerful.

Second, the risk of error in all commitment decisions is relatively high. Such determinations necessarily require subjective judgment. As Chief Justice Burger wrote in his opinion for the Supreme Court in *Addington v. Texas:*

> At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable.... However, there is the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct.
>
> ....
>
> The individual should not be asked to share equally with society a risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.

441 U.S. at 426–27, 99 S.Ct. at 1809–10. This risk is heightened where the only safeguard used is the opinion of one physician, who may or may not have any specialized training in mental illness, or the mere possibility of the patient's being given a cause hearing by the county court. The need for a mandatory hearing on probable cause to reduce the risk is self-evident.

No one disputes that the alleged dangerousness of the patient, certified *ex parte* by a physician, justifies his summarily being taken into custody. The issue is how long

such detention can be justified without affording him a probable cause hearing. The State defends the present delay on the basis of the need to schedule an efficient, efficacious full hearing on the temporary or indefinite commitment. This interest is insufficient to overcome the patient's right to be free from prolonged erroneous detention. The State has no valid interest in confining individuals involuntarily if they are not in fact dangerous. *See Addington v. Texas, supra,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323.

This Court finds persuasive the reasoning of the courts allowing emergency commitment to continue only for the length of time necessary to arrange for a probable cause hearing. *See Doe v. Gallinot,* 486 F.Supp. 983 (C.D.Cal.1979). In *Doe,* the court held that a probable cause hearing was required after the state-established 72-hour emergency detention period. After weighing the various interests involved, this Court finds that no adequate justification exists for not providing a probable cause hearing on pre-hearing detention within 72 hours after a patient is taken into protective custody pursuant to Art. 5547–66, V.A.T.S.

The Defendants identify several procedural safeguards which they believe alleviate the necessity of a probable cause hearing for protective custody detainees. An attorney is appointed for the patient simultaneously with the filing of an application for temporary or indefinite commitment. Arts. 5547–33, 5547–43, V.A.T.S. The county court may (but is not required to) allow the attorney to contest the need for continued confinement at any time, including a time prior to the issuance of a protective custody order. In addition, under the present Mental Health Code and the regulations promulgated by TDMHMR, a state hospital superintendent may request a recision of an order of protective custody where the admission criteria are not met. 25 Tex. Admin.Code § 405.485.

These safeguards, however, do not adequately minimize the risk that a patient will be unnecessarily confined prior to his formal hearing on the grounds that he is too dangerous to be at liberty. If the unbridled discretion placed in the hands of the county court and the state hospital superintendent is not exercised, the state's determination will go unreviewed.[8] To condition the availability of a probable cause inquiry on counsel's appeal to the unreviewable discretion of county judges and State hospital employees turns the burden of due process on its head. In order to satisfy due process, the State must initiate the hearing and justify the deprivation. *See Doe v. Gallinot,* 657 F.2d 1017, 1023 (9th Cir.1981). Although it may indeed be "highly unlikely that a Court would refuse such a hearing upon the request of counsel," Memorandum for Defendant at 22, leaving the decision in the discretion of county courts which "vary greatly" in their application of the provisions of the statute, Stipulation 23, is not a substitute for concrete due process safeguards. Under the facts in this case, due process demands a mandatory, state-initiated probable cause hearing for protective custody detainees.

The commitment decisions under the protective custody statute are highly error-prone. For example, of the 219 persons confined at RGSC during fiscal year 1980, approximately 81 persons (37%) were discharged by the court or released by the hospital on or before the temporary commitment hearing date. *See Stipulation 27.* These statistics indicate that a significant

---

**8.** In the leading Texas decision analyzing the protective custody provision, the court concluded that "[t]he Mental Health Code does not provide for a method of appeal from orders of protective custody; therefore, habeas corpus is the only remedy available to those seeking relief from such orders." *Ex Parte Ullmann,* 616 S.W.2d 278, 280. The Ninth Circuit in *Doe* expressly rejected the adequacy of state habeas relief as a substitute for a mandatory, state-initiated hearing. 657 F.2d 1017, 1023. The Fifth Circuit has found the *Doe* opinion persuasive in this respect. *See Benham v. Edwards,* 678 F.2d 511, 521 (5th Cir.1982) (state habeas corpus relief not an adequate substitute for state initiated hearing).

number of those initially determined to be mentally ill and dangerous are ultimately found not to even require temporary hospitalization. In fact, even those persons who are ultimately committed will never be able to test the propriety of their protective custody, for the standard for temporary or indefinite commitment is only that the person is mentally ill and in need of hospitalization, not the dangerousness standard that justified their pre-hearing detention. In these cases the state will never have to justify the significant deprivation of liberty occasioned by an erroneous protective custody decision.

The requirement for a prompt probable cause hearing will not place an onerous burden on the state. Only the following minimum safeguards are necessary:

(1) the patient must be given an opportunity to challenge the allegation that he is dangerous;

(2) service on the patient and his attorney of written notice that he has been placed under protective custody and the reasons why such order was issued;

(3) an independent decisionmaker.

The probable cause hearing is not one where the state must meet its ultimate burden of justifying either temporary or indefinite commitment. It merely requires that the state show probable cause for believing the assertion that the patient is too dangerous to be at liberty pending the final hearing. *Cf. Morrissey v. Brewer*, 408 U.S. at 485, 92 S.Ct. at 2602. This lighter burden recognizes the fact that the state would often encounter practical difficulties in marshalling enough evidence within 72 hours to justify ultimate commitment.

Providing written notice of the facts justifying protective custody recognizes that "notice is essential to afford the [detainee] an opportunity to challenge the contemplated action and to understand the nature of what is happening to him". *Vitek v. Jones*, 445 U.S. 480, 496, 100 S.Ct. 1254, 1265, 63 L.Ed.2d 552 (1980). *See also In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967). Defendants argue that protective custody detainees have sufficient notice because when the temporary or indefinite commitment application is filed, they are served with written notice of the time and place of the formal commitment hearing, the application itself, and an order, if any, to submit to a medical examination. It is sophistry to equate the notice given to all proposed patients awaiting a hearing on the application for temporary or indefinite commitment (whether in custody or not) with notice of protective custody. The former notice gives the patient no idea why he, unlike others, has been singled out for detention in a mental facility pending his formal hearing. Due process clearly requires notice of this separate deprivation imposed on a proposed patient.

Finally, due process requires independent evaluation of probable cause, by a neutral and detached person. *See Miller v. Vitek*, 437 F.Supp. 569, 574 (D.Neb.1977) (3 judge court), *aff'd sub nom., Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). As noted in *Doe v. Gallinot*, 486 F.Supp. 983, 994 (C.D.Cal.1979), due process does not necessarily require that the determination be made by a judicial officer. The process should be flexible enough to consider evidence including letters, affidavits and other material that may not be admissible or sufficient in the full temporary commitment hearing. *See, e.g., Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604. Given the practical difficulties involved in producing a physician for cross-examination, the state may be allowed to rest on the affidavits filed in support of the initial detention. The patient may be allowed to present counter-evidence and affidavits, however. What is required is that the decision maker have an adequate factual basis for a finding of probable cause to continue protective custody beyond 72 hours.

Based upon the above, Defendants' Cross-motion for Summary Judgment will be DENIED, and summary judgment will be

GRANTED to Plaintiff and the Plaintiff class.

## FINAL JUDGMENT

Based on the Memorandum Opinion filed this date, it is hereby ORDERED that the Defendants' Cross-motion for Summary Judgment be DENIED, and that summary judgment be GRANTED to Plaintiff and the Plaintiff class.

■ It is expressly found and declared that Plaintiff Santiago Luna's confinement under protective custody by Defendants for fourteen days without an opportunity to be heard at a probable cause hearing with counsel present denied him his constitutional rights to due process.

■ It is further found and declared that Article 5547–66, Vernon's Ann.Tex.Stat., is unconstitutional insofar as it allows persons to be confined in protective custody in excess of 72 hours without notice and opportunity for a probable cause hearing with counsel present on the issue of why protective custody is required in their case.

It is also ORDERED that the Defendants, their agents, employees and representatives be permanently enjoined from detaining any member of Plaintiff's class in protective custody under Article 5547–66, V.A.T.S., in excess of 72 hours unless such persons are provided notice and a probable cause hearing, with counsel, on the issue of why protective custody is required in their case.