Robert J. TAYLOR, as a Mentally Ill Person, Appellant,

v.

The STATE of Texas For the Best Interest and Protection of Robert J. Taylor, Appellee.

No. 01–820818–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 23, 1983.

James E. McQuade, Houston, for appellant.

Mike Driscoll, Houston, for appellee.

Before JACK SMITH, BASS and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a mental health commitment wherein the jury found by a five to one verdict that the appellant was in need of hospitalization. The appellant challenges the commitment on three issues, insufficient evidence, denial of due process of law and lack of a unanimous verdict.

In his first point of error, the appellant alleges that there was insufficient evidence to sustain the finding that he was mentally ill and required commitment in a mental hospital. He notes that the jury did not find that he required hospitalization for the protection of others, but found only that hospitalization was necessary for his own protection. He asserts that the evidence did not reflect a recent overt act by him showing a real and imminent danger to himself.

The appellant's mother testified that the appellant walked the street all day long, never wore a shirt, came to her home and wrote on her porch, and hollered and screamed if she refused to open the door. She said that the appellant called her a whore, and when he was arrested, said that

he would "get her for this". She further testified that the appellant harassed her neighbors by cursing and screaming at them.

The appellant's mother also testified that she had applied for the appellant's commitment two months earlier but at that time the hospital did not have a vacant bed. She filed the present application when the hospital notified her of an available bed.

The appellant's brother testified that the appellant had threatened him with a knife when they argued over a key to the apartment. He stated that the appellant called him a mass murderer and that the appellant repeatedly referred to himself as Christ. He said that the appellant wore the same clothes for months and was dirty and unkempt. He further stated that the appellant had refused to eat, had lived on his mother's front porch, and had defecated on the porch.

The appellant's former mother-in-law testified that the appellant had threatened his children's playmates, telling them that if they played with his children he would beat them up. She had also observed the appellant beating on the windows and mail box of the house down the street from her home. She stated that the appellant had told her that he had to hurry because the F.B.I. was following him. She further testified that the appellant continually appeared dirty, sweaty and tired, and was not himself.

Dr. Griffith was appointed by the court to perform a mental status examination on the appellant. He examined the appellant on two occasions and stated at trial that the appellant, in reasonable medical probability, suffered from a paranoid delusional psychosis. Dr. Griffith testified that the appellant said that he was the object of a political plot to deprive him of property he had inherited. The appellant felt that others, including the hospital staff, were implicated in this conspiracy.

Dr. Griffith stated that the appellant did not appear to pose a severe threat to himself but that he appeared to pose a threat to others because he is pushy, belligerent, and threatens people. In Dr. Griffith's opinion, this demeanor could lead to the appellant being harmed because third parties might consider him to be dangerous. He testified that the appellant scored three on a scale of four on the danger criteria scale.

Dr. Griffith recommended that the appellant's best interest would be served by treatment in an in-patient setting because the appellant would receive medication and professional therapy. He said the appellant was not a candidate for out-patient treatment, because the appellant did not appreciate the nature and existence of his illness.

After the State rested, the appellant testified that he had been employed previously by the City of Houston Health Department and "Shell Orleans" restaurant. He also stated that he had a possible job as a waiter in a restaurant.

The appellant stated that he had finished at Rice University in 1962, 1963, and 1964 in food management and food service. He stated also that he attended Texas Southern University from 1966–69 and finished at the University of Houston in real estate property management and business management. He said that he did not yet have a degree but could obtain one. He further testified that he had previously held a job as a degreed professional with the City of Houston Parks and Recreation Department and Houston Independent School District.

The appellant denied having threatened his brother with a knife, and he accused his brother of threatening to beat him up during their argument over the apartment key. When asked if he had ever referred to himself as Christ, he stated that he refers to himself as a "Jewish person" and said, "I'm not going to answer your question yes or no."

The appellant testified that the F.B.I. was not after him but that he had been monitored because he had been an elected official. He stated that he believed he was a political prisoner and that the plot against him involved the instant hearing.

He also testified that he did not have a mental illness and that he did not want to take medication.

■■■ To comply with the standards of due process required by the Texas and Federal Constitutions, it has generally been held that the fact finder must find that the person in question is suffering from a mental illness and that hospitalization is necessary for the protection of the person himself or for the protection of others. *Harris v. State*, 615 S.W.2d 330 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). Further, a person may not be deprived of his liberty by a temporary involuntary commitment unless there is a showing of a substantial threat of future harm to himself or others. This showing must be found upon actual dangerous behavior manifested by some overt act or threat in the recent past. *Lodge v. State*, 597 S.W.2d 773 (Tex.Civ. App.—San Antonio) *aff'd on other grounds*, 608 S.W.2d 910 (Tex.1980); *Seekins v. State*, 626 S.W.2d 97 (Tex.App.— Corpus Christi 1981, no writ). Finally, the evidence presented by the State must establish the nature of the illness and the need for commitment by clear and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

■■■ The testimony of the appellant's mother, brother, and former mother-in-law concerning recent threats and acts of violence committed by the appellant, tends to show that the appellant required hospitalization. The appellant's hostile and provocative behavior toward his family and third parties could foreseeably result in someone acting in a more violent manner toward the appellant in the future. This could result in injury to the appellant and perhaps to others. *See, Seekins v. State, supra*, and *Reed v. State*, 622 S.W.2d 910 (Tex.App.— Fort Worth 1981, no writ).

We hold that there is sufficient evidence to sustain the finding that the appellant is in need of hospitalization for his own welfare and protection. The appellant's first point of error is overruled.

■■■ The appellant next alleges that he was not afforded a probable cause hearing within a reasonable time of his detention. He states that this failure deprived him of his liberty without due process of law and requires reversal of the commitment order.

The record reflects that the appellant was arrested pursuant to an order for protective custody on September 27, 1982. He remained in the hospital for ten days prior to the involuntary commitment hearing.

The appellant's pre-commitment detention complied with the provisions of the Texas Mental Health Code. Tex.Rev.Civ. Stat.Ann. art. 5547–66 (Vernon 1980). He was provided a hearing within the fourteen day period required by the statute. Tex. Rev.Civ.Stat.Ann. 5547–68(b), (Vernon Supp.1983). These provisions were found to be constitutional in *Ex parte Ullmann*, 616 S.W.2d 278 (Tex.App.—San Antonio 1981, no writ).

However, after the *Ullmann* decision was published, article 5547–66 was held unconstitutional in *Luna v. Van Zandt*, 554 F.Supp. 68 (S.D.Tex. Brownsville Div. 1982). The Federal court held that the State may not hospitalize an individual pending an involuntary civil commitment hearing for more than three days, unless a probable cause determination is made by a neutral fact finder at a hearing wherein the patient is present. The fact finder must find that there is probable cause for continued hospitalization to permit retention until a commitment hearing is had.

In response to the *Luna* decision, the Texas legislature enacted emergency legislation incorporating the requirements of a probable cause hearing. Tex.S.B. 213, 68th Leg. (1983). This emergency legislation expires on August 31, 1983. General legislation incorporating the probable cause requirement has been enacted also, and will become effective September 1, 1983. Tex. S.B. 435, 68th Leg. (1983).

It is not necessary that this court decide whether due process required a probable cause hearing in the instant case.

■ Although the appellant was not afforded a probable cause hearing, he was afforded an opportunity to be heard and present evidence on his own behalf at the commitment hearing. The jury found the appellant to be mentally ill and in need of hospitalization. Therefore, the appellant's commitment was the result of a hearing which incorporated the due process requirements of *Luna, supra.* The remedy for failure to provide a probable cause hearing within three days of the emergency commitment is release, pending the temporary commitment hearing. *Id.*

■ An analogous situation exists in criminal law. Due process prohibits a lengthy pre-trial detention unless there is a judicial determination of probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974). Thus, in Texas, by statute, an accused has a right to an examining trial to determine whether the accusation against him is sufficient to bring him to trial. If the State fails to establish the existence of probable cause that the accused committed a crime, the magistrate can release the accused. Tex. Code Crim.Pro.Ann. art. 16.01.

■ However, an accused does not have a right to an examining trial once the grand jury has returned an indictment, since an indictment is the grand jury's determination that there is probable cause to prosecute the accused. *Russell v. State,* 604 S.W.2d 914 (Tex.Cr.App.1980); Tex. Code Crim.Pro.Ann. art. 16.01 *et seq.* (Vernon Supp.1981). Similarly, in the instant case, the failure to hold a probable cause hearing within seventy-two hours did not constitute reversible error because the appellant has been afforded a commitment hearing in which due process standards were satisfied. The appellant's second ground of error is overruled.

The appellant contends in his final point of error that he was denied due process of law because the jury's verdict was not unanimous.

■ In Texas, mental health commitment proceedings are considered to be civil proceedings, as opposed to criminal proceedings, and the Texas Mental Health Code is contained within the civil statutes. Tex.Rev.Civ.Stat.Ann. Art. 5547 (Vernon 1980). Accordingly, this being a civil matter, the Texas Rules of Civil Procedure control the procedural aspects of the case. Rule 292 provides that "A verdict may be rendered in any cause by the concurrence, as to each and all answers made, ... of the same five members of an original of six." The appellant contends, notwithstanding Rule 292, that Texas requires a unanimous verdict in criminal cases and since mental health cases involve involuntary commitment, they should also require a unanimous verdict. The due process clause of the Federal constitution does not require a unanimous verdict in criminal cases. *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).

■ The appellant did not object to the charge on the basis that it did not require a unanimous verdict. He, therefore, has waived his objection. The appellant's third point of error is overruled.

The judgment of the trial court is affirmed.