In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00117-CV

                                                ______________________________

 

 

                                                                  

              THE STATE OF TEXAS FOR THE BEST INTEREST 

                                    AND
PROTECTION OF S.W.

                                                                  

 

 

                                                                                                  


 

 

                                          On Appeal from the County Court at Law #2

                                                              Hunt County, Texas

                                                          Trial Court
No. M-10152

 

                                                                
                                  

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            On September
29, 2011, S.W., a twenty-five-year-old female, appeared in an emergency room in
Hunt County complaining of suicidal thoughts and acting aggressively toward
emergency-room staff.[1]  Diagnosed with schizoaffective disorder and
as bipolar, S.W. has been involuntarily committed to inpatient mental health treatment.[2]  Because we find no evidence in the record of
a recent overt act or continuing pattern of behavior that tends to confirm the likelihood
of serious harm to S.W. or a substantial deterioration of S.W.’s ability to
function independently to provide for her basic needs, we reverse the judgment
of the trial court.

            At the
October 17, 2011, hearing on the State’s application for court-ordered extended
mental health services,[3]
the trial court found that S.W. was mentally ill and that, as a result of her
mental illness, she was likely to cause serious harm to herself.  The trial court further found that S.W.
“will, if not treated, continue to suffer severe and abnormal mental, emotional
or physical distress and will continue to experience deterioration of the
ability to function independently and is unable to make a rational and informed
decision as to whether or not to submit to treatment.”  

            A trial court may order the
temporary inpatient mental health services of a proposed patient only if the
fact-finder concludes, from clear and convincing evidence, that the proposed
patient is mentally ill and also satisfies at least one of the subparagraphs
(A), (B), or (C) of Section 574.034(a)(2) of the Texas Health and Safety
Code, requiring that the proposed patient, due to the mental illness:

            (A)       is likely to cause serious harm to
himself;

 

            (B)       is likely to cause serious harm to
others; or

 

            (C)       is:

 

                        (i)         suffering severe and abnormal mental,
emotional, or physical distress;

 

                                                (ii)        experiencing substantial mental or
physical deterioration of the proposed patient’s ability to function
independently, which is exhibited by the proposed patient’s inability, except
for reasons of indigence, to provide for the proposed patient’s basic needs,
including food, clothing, health, or safety; and

            

                                                (iii)       unable to make a rational and informed
decision as to whether or not to submit to treatment.

 

Tex. Health &
Safety Code Ann. § 574.034(a)(2) (West 2010).  If the trial court finds that the proposed
patient meets the prescribed commitment criteria, it must then specify which
criterion forms the basis of the decision. 
Tex. Health & Safety Code Ann.
§ 574.034(c) (West 2010).  Here, mental
illness is not disputed, and there is no claim S.W. is a threat to others.  Rather, S.W. contends the evidence is legally
insufficient to establish, by clear and convincing evidence, a recent overt act
or a continuing pattern of behavior that tends to confirm (1) that S.W. was
likely to cause serious harm to herself or (2) S.W.’s distress and the
deterioration of her ability to function. 
See Tex. Health & Safety Code Ann. § 574.034(a)(2)(A), (C).

            “[A] State cannot
constitutionally confine without more a nondangerous individual who is capable
of surviving safely in freedom by himself or with the help of willing and
responsible family members or friends.”  O’Connor
v. Donaldson, 422 U.S. 563,
576 (1975).  The requirements for an
involuntary commitment are strict because an involuntary commitment is a
drastic measure.  In re Breeden, 4 S.W.3d 782, 789 (Tex. App.—San
Antonio 1999, no pet.).  The evidentiary
standards for involuntary commitment are high.  State ex rel. E.E., 224 S.W.3d 791, 794 (Tex. App.—Texarkana
2007, no pet.); Harris v. State,
615 S.W.2d 330, 333 (Tex. Civ. App.—Fort Worth 1981, writ ref’d n.r.e.).  The State has the burden of establishing by
clear and convincing evidence that the proposed patient meets at least one of
the additional criteria listed in Section 574.034(a)(2) of the Texas Health and
Safety Code.  State ex rel. L.H., 183 S.W.3d 905, 909 (Tex. App.—Texarkana 2006,
no pet.).  Clear and convincing evidence
is that measure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.  Tex. Civ. Prac. & Rem. Code Ann.
§ 41.001(2) (West 2008); State v.
K.E.W., 315 S.W.3d 16, 20 (Tex. 2010). 

            To
be clear and convincing, the evidence must include, unless waived, expert
testimony and evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm “(1) the likelihood of serious harm to the
proposed patient or to others; or (2) the proposed patient’s distress and the
deterioration of the proposed patient’s ability to function.”  Tex.
Health & Safety Code Ann. § 574.034(d) (West 2010).  The threat of harm must be substantial and
based on actual dangerous behavior manifested by some overt act or threats in
the recent past.  Id.; State ex rel. K.D.C., 78
S.W.3d 543, 547 (Tex. App.—Amarillo 2002, no pet.).  Further, evidence that a person has a mental
illness or is exhibiting psychotic behavior alone is insufficient to justify
commitment on the grounds of mental distress and the deterioration of the
ability to function independently.  T.G. v. State, 7 S.W.3d 248, 252 (Tex.
App.—Dallas 1999, no pet.).

            Because
the State’s burden of proof is clear and convincing evidence, we apply a
heightened standard of review.  See
K.E.W., 315 S.W.3d at 20; In
re C.H., 89 S.W.3d 17, 25
(Tex. 2002).  To review the legal
sufficiency of the evidence where the burden of proof is clear and convincing
evidence, we review all the evidence in the light most favorable to the finding
to determine whether a reasonable fact-finder could have formed a firm belief
or conviction that the finding was true.  See K.E.W., 315 S.W.3d at 20.  Disputed
fact questions are resolved in favor of the finding if a reasonable fact-finder
could have done so.  Contrary evidence is
disregarded unless a reasonable fact-finder could not have done so.  City of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005).

            Paul
Lee, a medical doctor specializing in psychiatry, is a member of S.W.’s
treatment team.  Having evaluated S.W. in
excess of ten times, Lee determined that S.W. suffered from schizoaffective
disorder of the bipolar-type.  Lee opined
that S.W. suffers from a combination of mood and thought disorder.  The thought disorder “represents distortions
in thought, delusions, [and] hallucinations.” 
The mood disorder of the bipolar type results in very intense periods of
euphoria and intense periods of depression. 
Lee expressed great concern over the hallucinatory activity.  S.W. experienced frequent auditory hallucinations
“that expressed telling her to do things, telling her to hurt herself.”[4]  S.W. also experienced persecutory delusions,
in which she feels like people are trying to hurt her.  One example of this type of delusion occurred
during S.W.’s hospitalization—she reported that a peer followed her onto the
unit intending to sexually assault her. 
S.W. expressed a belief that this peer killed his mother and intended to
kill all of the people on the unit.[5]  

            Undeniably,
Lee’s testimony tracked the language found in Section 574.034.  However, an expert opinion recommending
involuntary commitment must be supported by the factual bases on which it is
grounded and not simply recite the statutory criteria.  See K.T. v. State, 68 S.W.3d 887, 893 (Tex. App.—Houston
[1st Dist.] 2002, no pet.); Breeden, 4 S.W.3d at 784.  The
expert should describe the patient’s specific behaviors on which his or her
opinion is based.  See K.D.C., 78 S.W.3d at 550.  Even when the evidence establishes that an
individual is mentally ill and in need of hospitalization, such evidence does
not meet the statutory standard for involuntary commitment.  K.T., 68 S.W.3d at 892. 
Moreover, psychotic behavior is not evidence of a “continuing pattern of
behavior that tends to confirm the likelihood of serious harm to [the proposed
patient] or others.”  K.D.C., 78 S.W.3d at 547 (quoting T.G., 7 S.W.3d at 252).

            Lee
testified that, as a result of mental illness, S.W. is likely to cause serious
harm to herself.  This opinion is based
on the report of auditory hallucinations telling S.W. to harm herself.  In order to justify committing a patient to a
mental health facility against his or her will, the threat of harm to the
patient or others must be substantial and based on actual dangerous behavior
manifested by some overt act or threats in the recent past.  K.D.C.,
78 S.W.3d at 547.  The record indicates
only that S.W. may have had suicidal thoughts.[6]  S.W. advised the court that she was not
hearing voices and that she had no intention of harming herself.[7]  Moreover, the record fails to indicate that
S.W. engaged in any recent overt act to actually harm herself.  See In
re P.W., 801 S.W.2d 1, 2 (Tex. App.—Fort Worth 1990, writ denied)
(reversing commitment order despite evidence that P.W. called cousin asking
about how to hold pistol to kill herself without causing a lot of pain).  Here, there is no indication S.W. actually
took steps to implement any suicidal thoughts she may have experienced.  There is no evidence S.W. attempted suicide
or purposely harmed herself.  Moreover,
S.W. has not demonstrated a pattern of behavior that tends to confirm she wants
to commit suicide.  See State ex rel. Best Interest & Protection of J.T., No. 06-08-00007-CV,
2008 WL 617513, at *8 (Tex. App.—Texarkana Mar. 7, 2008, no pet.) (mem. op.)
(patient engaged in pattern of attempting suicide that included an almost
successful attempt).

            Although no
evidence suggests that S.W. has attempted to harm herself directly, the State nevertheless claims that S.W.’s intrusive and
aggressive behavior is likely to result in serious harm to S.W. because such
behavior may incite others to harm her.[8]  Lee testified that S.W. suffered from persecutory
delusions and that she feels as if others are trying to hurt her.  On multiple occasions while on the unit, S.W.
became agitated, uncontrollable, and intrusive with other patients and with
staff.  As a result of this behavior, Lee
opined that S.W. might invite injury to herself.[9]  

            The
State relies on State v. K.E.W., 315
S.W.3d 16 (Tex. 2010), in arguing that behavior that could invite injury to
S.W. is sufficient to satisfy the statutory requirement that she is likely to
cause serious harm to herself.  In K.E.W., the proposed patient was
diagnosed with schizophrenia.  Id. at 18.  On a visit to the mental health center as a
patient, K.E.W. stated that he wanted to impregnate some of the center’s female
staff and repeatedly asked for a particular staff member.  Id.  K.E.W. was then taken to the emergency room,
where he explained to physicians that he had been chosen to help populate a new
race of humans and that there was a group of women he planned to find and
impregnate, including his adult stepdaughter. 
Id.

            K.E.W.’s
treating physician testified at his commitment hearing that, even though K.E.W.
 never expressed any intention to
impregnate anyone against her will, the physician “did not know, given
[K.E.W.’s] state of mind, if he would understand that ‘no’ means ‘no.’”  Id.
at 24–25.  The court of appeals reversed
the trial court’s order of temporary inpatient commitment, finding there was no
evidence of an overt act or continuing pattern of behavior that tended to
confirm either the deterioration of K.E.W.’s ability to function independently
or that he was likely to cause serious harm to others.  Id.

            The high
court reversed, finding sufficient evidence of an overt act.

 

[T]he statute requires evidence of a recent act
by the proposed patient, either physical or verbal, that can be objectively
perceived and that is to some degree probative of a finding that serious harm
to others is probable if the person is not treated.  The overt act itself need not be of such
character that it alone would support a finding of probable serious harm to
others.  See Tex. Health & Safety Code §
573.034(d)(1).

 

K.E.W., 315 S.W.3d
at 24.

 

            The State
contends that S.W.’s intrusive and aggressive behavior on “multiple occasions
while on the unit” establishes a continuing pattern of behavior which could
invite serious harm to S.W.  This
continuing pattern of behavior, the State maintains, is “to some degree probative
of a finding” of serious harm.  While it
may be probative of some danger, that is not the standard expressed by the
Texas Supreme Court.  That expressed
standard requires that the overt act or pattern of conduct be “to some degree
probative of a finding that serious harm to others is probable if the person is not treated.”[10]  Id.
at 24.  Here, Lee testified that the
“multiple occasions while on the unit” in which S.W. became “agitated to the
point that she was uncontrollable and very intrusive with other patients on the
unit and with staff” caused him to conclude that “she might invite injury to
herself.”  Evidence that S.W.’s
aggressive behavior might invite
injury falls short of evidence that serious harm to S.W. is probable in the absence of
treatment.  We, therefore, decline to
apply the concept of “invited injury,” as the evidence is insufficient to
support such a determination.[11]

            Because
there is no evidence of a recent overt act or continuing pattern of behavior
that tends to confirm that S.W. is likely to cause serious harm to herself, we
conclude that the evidence is legally insufficient to support that avenue to involuntary
commitment.  See Tex. Health & Safety Code Ann. §
574.034(a)(2)(A), (d)(1).

            There is
another ground on which the commitment could be affirmed.  The trial court found that
S.W. “will, if not treated, continue to suffer severe and abnormal mental,
emotional or physical distress and will continue to experience deterioration of
the ability to function independently and is unable to make a rational and
informed decision as to whether or not to submit to treatment.”  

            Lee
testified that S.W. is unable to make a rational, informed decision as to
whether to submit to treatment.  A person
is dangerous to himself or herself if he or she cannot make a rational decision
to receive treatment.  The threat results
from an inability to seek treatment which might improve her condition.  L.S. v.
State, 867 S.W.2d 838, 843 (Tex. App.—Austin 1993, no pet.); Johnson v.
State, 693 S.W.2d 559, 563
(Tex. App.—San Antonio 1985, no writ).

            While
S.W. may not always be in a position to make a rational decision to receive
treatment, the evidence indicates that she is not alone to make such a
decision.  C.W., S.W.’s husband,
testified that he would take S.W. to her psychiatrist—Dr. Burgos—when the need
arises, and will make certain S.W.’s medications are refilled in a timely
manner.  If S.W. were to ever exhibit any
suicidal tendencies, C.W. testified that he would get help immediately.  C.W. does the cooking and the cleaning, and
generally looks after and takes care of S.W. 

            The
record suggests that S.W. is capable of surviving safely in freedom by herself
with the help of C.W.  Her inability to
make a rational decision on her own to receive treatment is thus not a factor
which mitigates in favor of concluding that S.W. should be confined against her
will on this basis.  See Tex. Health & Safety
Code Ann. § 574.034(a)(2)(C); O’Connor,
422 U.S. at 576.

            Lee further
testified that, if not treated, S.W. will continue to suffer from mental
illness, which will continue to worsen over time.  Currently, S.W. is receiving treatment.  C.W. testified that he will make sure S.W.’s
medications are refilled in a timely fashion and that he will seek treatment
for S.W. whenever necessary.  Finally,
Lee testified that S.W. is able to provide for her basic needs.  

            Moreover, evidence
of hallucinations or delusions, without more, is insufficient to justify
involuntary commitment on the grounds of mental distress and the deterioration
of the ability to function independently.  E.R., 287 S.W.3d 297, 306 (Tex. App.—Texarkana 2009, no pet.).  Evidence of S.W.’s delusions and hallucinations
confirm that S.W. is mentally ill.  However,
an expert medical diagnosis of mental illness alone is not enough to support
involuntary commitment.   E.E., 224 S.W.3d at 794; see
Armstrong v. State,
190 S.W.3d 246, 252 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (evidence of
effects of mental illness does not necessarily establish evidence of
substantial mental or physical deterioration unless effects impair ability to
function independently or provide basic needs); see also T.G., 7 S.W.3d at 251–52 (physician’s
diagnosis that appellant suffered from “psychosis NOS” not sufficient to
support commitment).  Lee’s testimony,
required under the statute to support commitment, does not provide evidence of
a recent overt act or a continuing pattern of behavior confirming S.W.’s distress
and deterioration of her ability to function. 

            The facts on which Lee has based
his conclusions do not present clear and convincing evidence to support the
trial court’s order.  Therefore, this
record does not support the findings required by Section 574.034 of the Texas
Health and Safety Code by clear and convincing evidence, because there was no
evidence of a recent overt act or continuing pattern of behavior that tends to
confirm the likelihood of serious harm to S.W. or a substantial deterioration
of S.W.’s ability to function independently to provide for her basic
needs.  See Tex. Health & Safety
Code Ann. § 574.034(a), (d)(1), (2).

            We reverse
the trial court’s judgment and render judgment denying the State’s application
for mental health services.  Having been
advised by S.W.’s counsel that S.W. has already been released, we need not
order that release.  See Tex. Health & Safety
Code Ann. § 574.033(b) (West 2010); see also Tex. R. App. P.
43.2(c).

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          December
8, 2011

Date Decided:             December
9, 2011











[1]On
that occasion, S.W. reported hearing voices telling her to kill herself and was
agitated and threatening to the emergency room staff.  Approximately three or four days before the
September 29 incident, S.W. had quit taking certain prescription medications after
complaining of abdominal pain, stomach cramps, constipation, nausea, headaches,
ear pain, and hearing difficulties.  

 





[2]According
to S.W.’s counsel, S.W. has now been released by her attending psychiatrist and
is residing at her home with her husband.

 





[3]The
trial court took judicial notice of the court’s file, which contained two
physician’s certificates of medical examination for mental illness.  The first certificate, dated September 29,
2011, was signed by Paul Lee, M.D., of Hunt Regional Medical Center.  The certificate indicates that S.W. has been
hearing voices telling her to kill herself and that she is extremely agitated
and has no insight.  The certificate
further reflects the fact that S.W. is “voicing suicidal thoughts” and gives a
diagnosis of schizoaffective disorder, bipolar-type.  The second certificate, dated October 16,
2011, was signed by Dante Burgos, M.D., of Hunt Regional Medical Center.  The certificate indicates that S.W. is
reporting auditory hallucinations telling her to kill herself, is experiencing
hopelessness and suicidal thoughts, and is refusing and/or is resistant to
taking needed medications.  This
certificate reflects a diagnosis of schizophrenia, undifferentiated type vs.
schizoaffective disorder.  While the
trial court could not properly take judicial notice of the truth of the
allegations contained within the certificates, it was proper to take judicial
notice of the file to show the documents were part of the court’s files, that
they were filed on a certain date, and that the documents were before the court
at the time of the hearing.  See Tex.
R. Evid. 201; Fuller v. State,
30 S.W.3d 441, 445 (Tex. App.—Texarkana 2000, pet. ref’d).





[4]Both
certificates of medical examination for mental illness indicate that S.W.
reported experiencing suicidal thoughts. 
Because the certificates were not admitted as evidence at trial, they
cannot be considered in the determination of whether temporary mental health
services should be ordered.  See Tex.
Health & Safety Code Ann. § 574.034(f) (West 2010).





[5]This
allegation was investigated and determined to be baseless.  

 





[6]In
this regard, Lee testified that S.W. reported “frequent auditory hallucinations
that expressed telling her to do things, telling her to hurt herself.”  C.W., S.W.’s husband, testified that S.W.
never said anything to him about suicide and he did not believe S.W. was
suicidal. 

 





[7]S.W.
advised the trial court through her attorney that she was too nervous to speak
in the courtroom and wanted her attorney to tell the judge what she would tell
the court.  There was no objection by the
State and the court permitted S.W. to offer her communications through her
attorney.  

 





[8]The
State takes the position that the relevant “overt act” is an assault allegedly
committed by S.W. in which S.W. was “responding to feelings of somebody trying
to hurt her or do bad things to her.” 
The record, however, provides no details of any alleged assault.  Moreover, Lee specifically testified that it
is not likely that S.W. will cause serious harm to others.  Because there is no
evidence that an alleged assault is probative of a finding that serious harm to
S.W. or to others is probable, the record does not support the imposition of
temporary mental health services on that basis.

 





[9]In
spite of this opinion, there is no indication in the record that S.W. suffered
harm or injury as a result of her delusions or intrusive behavior.  Lee testified that it is unlikely that S.W.
would harm others. 

 





[10]This
standard applies to Section 573.034(d)(1) of the Texas Health and Safety
Code.  See K.E.W., 315 S.W.3d at 23. 
Section 573.034(d)(1) provides that clear and convincing evidence must
include, among other things, evidence of “a recent overt act or a continuing
pattern of behavior that tends to confirm . . . the likelihood of serious harm
to the proposed patient or others. . . .” 
Tex. Health & Safety Code
Ann. § 574.034(d)(1).  While
K.E.W. applied the probable-harm standard only to an evaluation of danger to
third parties, we see no reason that a different standard should be applied in
evaluating the likelihood of danger to the proposed patient—especially
considering the statutory language.

 





[11]The
concept of “invited injury” has heretofore been applied by Texas appellate
courts on a limited basis in involuntary commitment cases.  See
Taylor v. State, 671 S.W.2d 535, 538
(Tex. App.—Houston [1st Dist.] 1983, no writ) (proposed patient’s hostile and
provocative behavior toward family and others could foreseeably result in
injury to the proposed patient, thus placing proposed patient in need of
hospitalization for his or her own protection); Seekins v. State, 626 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1981,
no writ) (proposed patient’s behavior of making obscene gestures and directing
profanity at passers-by, shouting of obscenities with clenched fists to
customers at store, and “goosing” female customers is provocative conduct which
could result in physical danger to proposed patient); Reed v. State, 622 S.W.2d 910, 911 (Tex. App.—Fort Worth 1981, no
writ) (proposed patient’s violent behavior toward others required submission to
treatment for her own welfare and protection and/or protection of others).  These cases all predate K.E.W. and might be seen as violating its probable-harm standard.